**SO ORDERED.**

**SIGNED this 09 day of June, 2010.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

| | |
|---|---|
| **CONTINENTAL SALES & SERVICE, INC.,** | **CHAPTER 7**<br>**CASE NO. 08-00961-8-JRL** |
| **DEBTOR** | |
| **PARAGON COMMERCIAL BANK,** | **ADVERSARY PROCEEDING NO.:**<br>**09-00085-8-RDD** |
| **Plaintiff** | |
| v. | |
| **PROVANTAGE CORPORATE SOLUTIONS, LLC,** | |
| **Defendant** | |

## ORDER FOR SUMMARY JUDGMENT

Pending before this Court is the Plaintiff's Motion for Summary Judgment and the accompanying Memorandum of Law (collectively, the "Plaintiff's Motion") filed by Paragon Commercial Bank ("Paragon") and the Defendant's Motion for Summary Judgment and the accompanying Memorandum of Law (the "Defendant's Motion, collectively referred to herein with the Plaintiff's Motion, as the "Motions") filed by Provantage Corporate Solutions, LLC

("Provantage"). On May 4, 2010, the Court conducted a hearing on the Motions in Wilson, North Carolina.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate.

## DISCUSSION

Paragon claims that it is a third-party beneficiary of an asset purchase agreement entered into between Continental Sales & Services, Inc. ("Continental") and Provantage. While Paragon acknowledges a settlement it reached with the chapter 7 trustee in the main Continental bankruptcy case, Paragon claims any settlement between it and the chapter 7 trustee is irrelevant because of Paragon's status as a third party beneficiary to the asset purchase agreement. Furthermore, Paragon argues that $19,500.00 which was credited by Provantage to Continental was, in fact, part of the accounts receivable due to Paragon, as part of the asset purchase agreement, and pursuant to an order approving the agreement entered by this Court. Provantage takes the position that Paragon is owed nothing. Paragon and Provantage both agree and stipulate that because of the undisputed facts, resolution of the issue on summary judgment is appropriate.

**UNDISPUTED FACTS**

1. On or about February 14, 2008, Continental filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of North Carolina.

2. Continental was in the business of providing placement, designing, and stocking of inventory for large retailers. At the time of the filing of the petition, Continental's only existing retail contracts were its In-Store Service Agreements with Lowe's Companies, Inc. and Lowe's Companies Canada, ULC. (collectively referred to herein as "Lowe's").

3. After filing its plan of reorganization on June 12, 2008, Continental faced the immediate problem of not having sufficient cash to pay employee compensation and expense reimbursements of approximately $200,000.00, that were due on July 18, 2008.

4. Because the reorganization plan did not appear as if it could be confirmed and because of its impending cash crisis, Continental determined that it was in the best interest of its estate, its creditors, its customers, and its workers, who were employees of Continental Service Solutions, Inc., to sell certain assets to Provantage pursuant to the terms and conditions of an Asset Purchase Agreement, dated July 9, 2008 (the "Purchase Agreement").

5. Continental sought approval of the Purchase Agreement from the Bankruptcy Court. However, Paragon objected.

6. The Purchase Agreement, provided that Provantage would offer employment to 209 of the 216 employees of Continental, who had jobs with Continental at the time the Purchase Agreement was executed. For those 209 employees of Continental, Provantage required that to the extent it advanced money for payroll and reimbursable expenses related to services on behalf of Continental from June 27, 2008, through July 18, 2008, Provantage

would be fully reimbursed from the collection of Continental's account receivable from work on the Lowe's Contracts for those periods.

7. However, the Purchase Agreement excludes from the sale to Provantage certain defined assets, including, without limitation, Continental's rights under the Purchase Agreement, including the purchase price of $200,000.00,[1] any shares of capital stock of Continental, any and all cash and cash equivalents on hand or on deposit at the time of the sale;[2] any and all accounts receivable or other obligations owed to Continental for work done by Continental's employees under the Lowe's Contracts prior to Provantage taking over the business, any and all avoidance actions and other rights and claims that Continental has or may have under the Bankruptcy Code; and any and all contracts or leases of Continental that have not been assigned; provided, however, that Provantage shall have a first lien and right to be reimbursed for its payment of the payroll and expense reimbursement from Continental's cash on hand and all future collections from Lowe's for work done by Continental under the Lowe's Contracts.

8. The Purchase Agreement further provided that Provantage shall remit to Paragon any cash on hand or future collections that it receives from Lowe's in excess of the amount needed for reimbursement of the payroll or expenses.

9. On or about July 10, 2008, in its chapter 11 proceeding, docketed as case no. 08-00961-8-JRL, Continental filed its Emergency Motion by Debtor for Order (1) Approving the Sale of Substantially all of its Assets Free and Clear of Liens, Claims, Interests, and

---

[1] Pursuant to the parties negotiations, the cash price increased to $275,000.00.

[2] Continental had approximately $61,000.00 in cash on hand at the time the Purchase Agreement was signed.

4

    Encumbrances, Including the Assumption and Assignment of Certain Executory Contracts and Leases, and (2) Granting Related Relief ("Sale Motion").

10. Pursuant to the Sale Motion, Continental sought authorization from the Court for the sale of certain assets of the estate to Provantage.

11. On or about July 17, 2008, Judge A. Thomas Small of the United States Bankruptcy Court for the Eastern District of North Carolina issued an Order granting the Sale Motion (the "Sale Order").

12. The Sale Order provided that Provantage should pay the cash price to Paragon based on its position as a secured creditor with a senior perfected lien in the Acquired Assets, as defined in the Purchase Agreement.[3]

13. The Sale Order provided that Provantage was granted a first lien as to any cash and future collections; provided, however, that Provantage shall remit to Paragon any such cash on hand and future collections from Lowe's that it receives in excess of the amount needed to fully reimburse Provantage for its agreed payment of the employee compensation and expense reimbursement.

14. Provantage was fully reimbursed for its employee compensation and expenses in the amount of $326,827.95

15. After being fully reimbursed, Provantage received a payment from Lowe's for work that was partially completed by Continental and partially completed by Provantage. Since

---

[3] Attached to the Sale Motion was a copy of the Purchase Agreement.

   Continental completed half of the work, Provantage credited Continental's account for $19,500.00 for its share of the work.[4]

16. Subsequent to the Sale Motion on or about December 29, 2008, Continental's chapter 11 case was converted to a chapter 7.

17. Upon conversion, a chapter 7 trustee seized all assets of Continental, including the accounts receivable from the Lowe's Contracts.

18. Paragon asserted a first priority lien on the accounts receivable that were held in Continental accounts.

19. The trustee disagreed arguing that the monies in the accounts were, in fact, property of the estate. After negotiations, Paragon reached a settlement and received $40,354.53 from the chapter 7 trustee in exchange for the release of Paragon's secured claim.

20. An order approving the settlement between the chapter 7 trustee and Paragon was docketed on August 3, 2009.

21. Paragon does not dispute the receipt of these funds.

## ANALYSIS

Continental filed a petition for chapter 11 bankruptcy on June 12, 2008. Shortly thereafter, Continental realized that it would be unable to successfully reorganize and that the only viable option was for Continental to sell off certain portions of its assets. Continental and Provantage then entered into negotiations for Provantage to purchase certain assets from Continental. In order for this asset purchase agreement to work, Continental and Provantage had to reach an agreement with

---

[4] see Kipke affidavit, paragraph 12 attached to Provantage's Motion for Summary Judgment.

6

Paragon, Continental's largest secured creditor. After initial discussions, Paragon agreed not to object to the plan in exchange for a cash payment of $275,000.00 at the outset and any payment of accounts receivable collected by Provantage, in excess of what Provantage needed for reimbursement of employee compensation and expenses.

More specifically, the Purchase Agreement and Sale Order required that any funds collected by Provantage under the Lowe's Contracts in excess of what is needed to reimburse Provantage for employee compensations and expenses advanced by Provantage to Continental, were to be paid directly to Paragon. Under the terms of the Purchase Agreement and the Sale Order, Provantage was required to remit to Paragon any cash on hand, approximately $61,000.00 at the time of the agreement, or future collections from Lowe's that it receives in excess of the employee compensation and expense reimbursement. As a result, Paragon argues that it is a third party beneficiary to the Purchase Agreement between Continental and Provantage. As a third party beneficiary to the Purchase Agreement, Paragon asserts the right to enforce the contract to its benefit.

The Court agrees with Paragon that Provantage is not entitled to set off amounts owed by Continental to the detriment of Paragon. Based on its argument, Paragon claims that it is entitled to payment of the $19,500.00 received by Provantage, on behalf of Continental, regardless of whether Continental owed Provantage any monies. Relying on the terms of the Purchase Agreement, Paragon asserts that all payment received on behalf of the collections of the accounts receivable related to the Lowe's Contracts, after certain allowed deductions, were payable to Paragon. There is no provision in the Purchase Agreement that requires or allows for the set off of amounts between Provantage and Continental. Paragon claims that as a third party beneficiary under

the Purchase Agreement, setting off of amounts between the parties to the Purchase Agreement is not permitted as it is a detriment to Paragon's interest in those funds.

After having purchased the assets of Continental, Provantage was fully reimbursed for the payroll and employee expenses advanced to Continental, which totaled $326,827.95.[5]  Once fully reimbursed, any other accounts receivable collected by Provantage under the Lowe's Contracts were to be paid directly to Paragon.  After being fully reimbursed, Provantage received a payment directly from Lowe's for work done partially by Continental and partially by Provantage.  This payment was in excess of the amounts necessary to reimburse Provantage for the payroll and employee expenses.  Provantage then credited $19,500.00 to Continental for its part of the work against amounts owed to Provantage.  This setoff is a clear violation of the terms of the Purchase Agreement and the Sale Order because once Provantage had been fully reimbursed, all monies received under the Lowe's contracts were supposed to be remitted directly to Paragon.

Pursuant to the final accounting, Provantage concluded that the sum of $72,677.00 should be remitted to Paragon.  Provantage argued that, these funds would have been remitted to Paragon had Continental's case not converted to a chapter 7.  After Continental's case converted, Paragon's only recourse was to try to recover the funds from the trustee.  Through negotiations, Paragon ultimately received $40,354.53 from the chapter 7 trustee in exchange for a waiver of Paragon's secured claim against the funds seized by the trustee in the chapter 7 proceeding.  Therefore, this settlement fully resolves Paragon's claim to the funds held by the chapter 7 trustee.

---

[5]see Kipke affidavit, paragraph 16 attached to Provantage's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, summary judgment is **GRANTED** in favor of Paragon Commercial Bank in the amount of $19,500.00. Paragon shall have and recover such amount from Provantage and judgment shall be entered against Provantage Corporate Solutions, LLC in the amount of $19,500.00.

Further, summary judgment is **GRANTED** in favor of Provantage Corporate Solutions, LLC on Paragon's claims to other funds. Paragon reached a court approved settlement with the chapter 7 trustee for the amount of $40,354.53. This settlement fully resolves the claim to the funds held by the chapter 7 trustee and on which Paragon had a security interest.

Therefore, summary judgment is granted in favor of Provantage, and except to the extent of the $19,500.00 awarded to Paragon as set forth above, Paragon shall have and receive nothing further from Provantage on its claims related to the Purchase Agreement and Sale Order.

**SO ORDERED.**

**END OF DOCUMENT**